1
2
3
4
5
6

TRIAL & TECHNOLOGY LAW GROUP
A PROFESSIONAL CORPORATION
ROBERT A. SPANNER SBN 60308
545 MIDDLEFIELD ROAD, SUITE 220
MENLO PARK, CA 94025
PHONE: (650) 324-2223
FAX: (650) 324-0178
email - ras@techtriallaw.com

Attorney for Plaintiff
DIANA RIOS

7
8
9

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DIANA A. RIOS,

          Plaintiff,

v.

EMC MORTGAGE CORPORATION,
GREENPOINT MORTGAGE, AZTEC
FORECLOSURE CORP., WELLS FARGO
BANK, N.A., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
VINTAGE HILLS MORTGAGE, INC.,
SMART SAVINGS MORTGAGE, JP
MORGAN CHASE, KIMBERLY
CONNOLLY, JEFFREY C. EVENS,
MOLLY BUELL and JOHN YONAN,

          Defendants.
_____/

CASE NO.

COMPLAINT FOR:

1. VIOLATION OF REAL ESTATE
   SETTLEMENT PROCEDURES ACT
   (12 USC § 2605)
2. VIOLATION OF REAL ESTATE
   SETTLEMENT PROCEDURES ACT
   (12 USC § 2607)
3. VIOLATION OF CALIFORNIA
   ROSENTHAL ACT
4. BREACH OF FIDUCIARY DUTY
5. FRAUD
6. BREACH OF CONTRACT
7. BREACH OF IMPLIED COVENANT
   OF GOOD FAITH AND FAIR
   DEALING
8. WRONGFUL FORECLOSURE
9. VIOLATIONS OF CALIFORNIA
   BUSINESS & PROFESSIONS CODE
   §17200

**DEMAND FOR JURY TRIAL**

1

COMPLAINT

Plaintiff Diana A. Rios (hereinafter "Plaintiff"), by and through her counsel, for her

Complaint against Defendants EMC Mortgage Corporation, GreenPoint Mortgage Funding, Inc.,

JPMorgan Chase Bank, Wells Fargo Bank, N.A., Aztec Foreclosure Corp., Mortgage Electronic

Registration Systems, Inc., Vintage Hills Mortgage Corp., Smart Savings Mortgage, Jeffrey C.

Evens, John Yonan, Molly Buell and Kimberly Connolly (collectively hereinafter

"Defendants"), pleads as follows:

## JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1367,

18 US.C. §1964(c) and 15 U.S.C. §1640(e).  This is an action asserting violations of federal

statutes commonly known as the Truth in Lending Act ("TILA"), the Real Estate Settlement

Procedures Act ("RESPA"), and Regulation Z (12 C.F.R. §226 et seq.), as well as additional

claims under California State Law.  These claims all arise out of the same controversy and

sequence of events.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), in that a

substantial part of the events giving rise to the claim occurred in this judicial district, and

in that a substantial part of property that is the subject of the action is situated in this judicial

district.

3.      This court has personal jurisdiction over the parties as all Defendants engage in

business within the State of California and the Eastern District and thus have sufficient contacts.

4.      This Court has pendent jurisdiction over the state claims pursuant to 28 U.S.C.

§1367(a).

5.      Defendants, and each of them, regularly engage in business in the State of

California and regularly provide loans to residents of the State of California and this District who

wish to obtain a mortgage loan and who contact or are contacted by a loan officer for assistance

in obtaining the necessary financing.

6.      Plaintiff bring this action against Defendants for damages and harm resulting

from the Defendants' negligent, fraudulent and unlawful conduct concerning a residential

COMPLAINT

mortgage loan transaction with Plaintiff.  The residential mortgage concerns the property located at 1225 Doubles Court, Tracy, County of San Joaquin, State of California.

## PARTIES

7.     Plaintiff lives at the residential property located at 1225 Doubles Court, Tracy, County of San Joaquin, State of California.

8.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendants EMC Mortgage, GreenPoint Mortgage Funding, Inc., Wells Fargo Bank, JPMorgan Chase, Mortgage Electronic Registration Systems, Inc. and Aztec Foreclosure Corp. are diversified financial marketing and services corporations engaged primarily in residential mortgage banking and related businesses.

9.     Plaintiff is informed and believes, and thereon alleges that Mortgage Electronic Registration System Inc. ("MERS") is a Delaware corporation engaged in the business of holding title to mortgages.  It does business in California as evidenced by inclusion of its name in the deed of trust.  MERS is not registered to do business in California and its agent for service of process resigned March 25, 2009.  The deed of trust in this case states "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale the following described property. . . ."

10.     Plaintiff is informed and believes and thereon alleges that MERS conduct with respect to the promissory notes and deeds of trust in this case are governed by "MERS Terms and Conditions" applicable to Defendant Banks, which state that:

> "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to

3

COMPLAINT

1
2
3
4

> such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law."

5    11.    As a result of such conditions, MERS has no beneficial interest or rights to

6 enforce the terms of the promissory note pursuant to the terms of California Commercial Code

7 including but not limited to §§1201(21), 3301, and 3309 because it is not in possession of the

8 promissory note and has no authority to conduct any non-judicial foreclosure sale.

9    12.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

10 in this Complaint, Defendants Vintage Hills Mortgage, Inc., Jeffery C. Evens, broker of record

11 of Vintage Hills Mortgage, Inc., GreenPoint Mortgage, JPMorgan Chase, John Yonan, broker of

12 record of Smart Savings Mortgage, Smart Savings Mortgage, Molly Buell, a loan officer and

13 Kimberly Connolly, a loan officer, sold Plaintiff the mortgage loans in question in this matter.

14    13.    Plaintiff is informed and believes and thereon alleges that at all times mentioned in

15 this Complaint, Defendant Kimberly Connolly was the loan officer who sold Plaintiff the first and

16 second mortgage loans in or about September 2005.  Plaintiff is informed and believes and

17 thereon alleges that at that time Defendant Connolly was licensed by the California Department of

18 Real Estate as a broker or a sales person, under the name Kimberly Cose.  Defendant Kimberly

19 Connolly held herself out to Plaintiff as a loan officer employed by Vintage Hills Mortgage and

20 was acting within the course and scope of that employment when she came into contact with

21 Plaintiff and sold Plaintiff the first and second mortgages at issue in this case.

22    14.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

23 in this Complaint, that Defendant Jeffrey C. Evens is a Real Estate Broker, licensed by the State

24 of California Department of Real Estate, and is the Broker of record for Vintage Hills Mortgage,

25 Inc. who sold Plaintiff the first mortgage at issue.  Defendant Jeffery Evens held himself out to

26 Plaintiff as a broker employed by Vintage Hills Mortgage and was acting within the course and

27 scope of that employment when they came into contact with Plaintiff and sold Plaintiff the first

28

COMPLAINT

1    and second mortgages at issue in this case.

2        15.    Plaintiff is further informed and believes that as the designated corporate officer

3    for Defendant Vintage Hills Mortgage, Defendant Evens was responsible for the training,

4    supervision and control of defendant's activities requiring a California Department of Real Estate

5    ("DRE") license and which were conducted by its officers, agents and employees.

6        16.    Plaintiff is further informed and believes that Defendant Evens directly ordered,

7    authorized, ratified or participated in the activities alleged against Defendants Vintage Hills

8    Mortgage and Kimberly Connolly in this complaint.

9        17.    Plaintiff is informed and believes and thereon alleges that at all times mentioned in

10   this Complaint, Defendant Molly Buell was the loan officer who sold Plaintiff the second

11   mortgage at issue.  Plaintiff is informed and believes and thereon alleges that at that time

12   Defendant Buell was not licensed by the California Department of Real Estate as a broker or

13   salesperson.  Defendant Buell held herself out to Plaintiff as a loan officer employed by Smart

14   Savings Mortgage and was acting within the course and scope of that employment when she came

15   into contact with Plaintiff and sold Plaintiff the second mortgage at issue in this case.

16       18.    Plaintiff is informed and believes and thereon alleges that at all times mentioned in

17   this Complaint, Defendant John Yonan was the broker of record of Smart Savings Mortgage who

18   sold Plaintiff the second mortgage at issue in or about September 2006.  At that time, Defendant

19   John Yonan was licensed by the California Department of Real Estate as a Broker.  Defendant

20   John Yonan and/or agents or employees of Smart Savings Mortgage held themselves out to

21   Plaintiff as brokers employed by Smart Savings Mortgage and were acting within the course and

22   scope of that employment when they came into contact with Plaintiff and sold Plaintiff the second

23   mortgage at issue in this case.

24       19.    Plaintiff is further informed and believes that as the designated corporate officer

25   for Defendant Smart Savings Mortgage, Defendant Yonan was responsible for the training,

26   supervision and control of such defendant's activities requiring a DRE license and which were

27   conducted on behalf of Defendant Yonan by its officers, agents and employees.

28

COMPLAINT

20.    Plaintiff is further informed and believes that Defendant Yonan directly ordered, authorized, ratified or participated in the activities alleged against Defendants Smart Savings Mortgage and Molly Buell in this complaint.

21.    Plaintiff is informed and believes and thereon alleges that Defendants and each of them at all relevant times herein were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

## FACTUAL BACKGROUND

22.    This action arises out of a loan and foreclosure related activity to the property of which the Plaintiff is the rightful owner.

23.    Plaintiff is informed and believes and thereon alleges that beginning in 1998, lenders, including Defendant lenders, developed a scheme to rapidly infuse capital into the home mortgage lending system by selling mortgages on the secondary market, normally three to five times to create a bankruptcy remote transaction, then pooling them into large trusts, securitizing the pool and selling these securities as mortgage backed securities, bonds and derivatives.

24.    Plaintiff is informed and believes and thereon alleges that in selling these mortgage notes on the secondary market, Defendants failed to follow state law requirements for the transfer of a negotiable instrument and an interest in real property.

25.    Plaintiff is informed and believes and thereon alleges that, in fact, no interest in Plaintiff's mortgage note, deed of trust or property were ever legally transferred to any of the Defendants and the Defendants are, in effect, legal strangers to the mortgage transaction involving Plaintiff.

26.    Plaintiff is informed and believes and thereon alleges that underwriting requirements were repeatedly reduced by participating financial institutions, including Defendants.  As the lenders, including Defendants, reduced underwriting requirements, they also introduced the practice of "churning" loans, *i.e.*, repeatedly refinancing borrowers' loans, taking as much equity as possible in each successive financing.

27.    Plaintiff is informed and believes and thereon alleges that lenders, including

COMPLAINT

Defendant lenders, regularly trained, directed, authorized and/or participated with mortgage brokers to implement this scheme, giving mortgage brokers monetary incentives to provide mortgage supply.

28.     Sometime in or about July of 2005, Plaintiff contacted Defendant Kimberly Connolly, who told Plaintiff that she was employed by Defendant Vintage Hills Mortgage, Inc. and told Plaintiff she could help her obtain a mortgage loan to purchase Plaintiff's residence.

29.     Defendant Connolly advised the Plaintiff that she could get her a "good deal" and the "best interest rates" available on the market.  Defendant Connolly knew or should have known that these assurances were false and misleading.

30.     According to a credit report ordered by Defendants Kimberly Connolly and Vintage Hills Mortgage in or about July 2005, Plaintiff's credit scores ranged from 692 to 719. On information and belief, the range of credit scores is approximately 300 - 850.

31.     When Plaintiff applied for the loans, Plaintiff accurately described her income and provided Defendant Connolly with documentation of her income including tax returns, bank statements, W-2s and 1099s.  Plaintiff is now informed and believes and thereon alleges that her income was overstated on the loan application by Defendants Connolly or Evens, without her knowledge or permission.  Defendant Kimberly Connolly also told Plaintiff that she would add information to Plaintiff's application that Plaintiff worked for Connolly's friend.  Plaintiff questioned Defendant Connolly about adding that information, but Defendant Connolly assured Plaintiff that all brokers did this.  Plaintiff is informed and believes and thereon alleges that Defendants' underwriters knew or should have known of the fraudulent information on the loan application but approved the loan anyway.

32.     Plaintiff was sold a negative amortization loan, which was not explained to her.

33.     Plaintiff's loan also contained a provision limiting the amount of unpaid principal to 110% of the amount Plaintiff originally borrowed.  The effect that exceeding the 110% limit would have on her monthly payments was not explained to Plaintiff.

34.     The Good Faith Estimate from Defendants Evens and Vintage Hills Mortgage, and

Defendant GreenPoint Mortgage were dated differently and contained different terms, including, *inter alia*, the amount of the loan origination fee, the amount of the loan and whether there was a loan discount. Plaintiff is informed and believes and thereon alleges, that was done for Defendants' economic gain and to mislead Plaintiff.

35.    In addition to a loan origination fee of 1% of the total of the first and second loans arranged by Vintage Hills which Plaintiff paid to Vintage Hills as part of the settlement charges in or about September 2005, Vintage Hills was also paid $2,082.50 by the lender as a kickback or rebate.

36.    The Good Faith Estimate from Defendants Evens and Vintage Hills Mortgage, and the Good Faith Estimate from Defendant GreenPoint Mortgage failed to disclose to Plaintiff that Defendant Vintage Hills Mortgage would be paid a kickback by Defendant GreenPoint Mortgage as part of the items payable in connection with Plaintiff's loans. Instead, the first time payment of the rebate from GreenPoint Mortgage to Vintage Hills Mortgage was disclosed is in the loan documents that are part of the Lender's Closing Instructions from GreenPoint Mortgage to Alliance Title dated September 2, 2005, in which the rebate is referred to under the section entitled "Broker Points."

37.    Plaintiff is informed and believes that the sole reason that Vintage Hills received this rebate was that it arranged this loan for Plaintiff at terms less favorable than Plaintiff was otherwise eligible to receive, including having a higher interest rate and a prepayment penalty.

38.    In or about September 2006 Defendants Buell, Yonan and Smart Savings Mortgage sold Plaintiff the second mortgage at issue in this complaint.

39.    When Plaintiff applied for the loan, Plaintiff accurately described her income and provided Defendant Buell and Smart Savings Mortgage with documentation of her income including tax returns, bank statements, W-2s and 1099s. Plaintiff is now informed and believes and thereon alleges that her income was overstated on the loan application by Defendants Buell and Smart Savings Mortgage, without her knowledge or permission. Plaintiff is informed and believes and thereon alleges that Defendant JPMorgan Chase underwriters knew or should have

1    known of the fraudulent information on the loan application but approved the loan anyway.

2         40.    Plaintiff was sold a loan program wherein she had a large balloon payment due and

3    a prepayment penalty of one percent of the loan amount.

4         41.    Plaintiff's Good Faith Estimate was dated August 28, 2006, but Plaintiff's loan

5    documents were not signed until October 18, 2006.  Plaintiff is informed and believes and thereon

6    alleges this was another attempt by the Defendants to mislead the Plaintiff regarding the type of

7    loan she was being sold.

8         42.    Plaintiff was not given a copy of any of the loan documents prior to closing as

9    required.  Plaintiff and Defendant Connolly met at the offices of a third party where Plaintiff

10   signed the loan documents.  Plaintiff was only given a short time in which to sign the documents,

11   and Plaintiff was discouraged from reviewing them, with Defendant Connolly telling Plaintiff that

12   Plaintiff could read the documents if she wanted to.

13        43.    Defendants Kimberly Connolly and Vintage Hills further advised Plaintiff that if

14   these loans ever became unaffordable, she would simply refinance them into affordable loans,

15   something Defendants Kimberly Connolly and Vintage Hills knew or should have known was

16   false and misleading.  Defendants Connolly and Vintage Hills knew or should have known that

17   these misrepresentations were designed to induce Plaintiff to accept these loans, to her detriment.

18        44.    In or about 2008 Plaintiff attempted to contact Defendant Connolly to obtain a

19   mortgage loan with a better rate and/or a lower monthly payment.  During Plaintiff's repeated

20   attempts to call Defendant Connolly, Defendant Connolly's voicemail was full and would not

21   accept new voicemail messages.  And when Plaintiff encountered Defendant Connolly and

22   attempted to speak to her, Defendant Connolly ignored Plaintiff.

23        45.    The true facts surrounding these loan transactions were unknown to Plaintiff.

24        46.    On or about September 2, 2005 Plaintiff completed loans on the property, the

25   terms of which were memorialized in a promissory note which in turn was secured by a Deed of

26   Trust on the property.  The Deeds of Trust on the first mortgage and on the Home Equity Line of

27   Credit identified Marin Conveyancing Corp. as Trustee and GreenPoint Mortgage Funding, Inc.

28

1    as Lender.

2        47.    The Deeds of Trust on the first mortgage and on the Home Equity Line of Credit

3    also identified "MERS" (Mortgage Electronic Registration Services, Inc.) as nominee for lenders

4    and lenders successors and assigns, and the beneficiaries.  Plaintiff is informed and believes and

5    thereon alleges, MERS has no standing to serve in any capacity under the Deeds of Trust as it is

6    not licensed or chartered to be and/or act as a nominee or beneficiary.  MERS was instituted as a

7    document storage company, not a nominee or beneficiary.  Therefore MERS has no standing to

8    assert a beneficial interest of any person or entity.

9        48.    On or about October 18, 2006, Plaintiff completed the second mortgage loan on

10   the property.  The terms of the loan were memorialized in a promissory note which in turn was

11   secured by a Deed of Trust on the property.  The Deed of Trust identified Douglas E. Miles as

12   Trustee and JPMorgan Chase Bank as the Lender and beneficiary.

13       49.    On March 30, 2009, a Qualified Written Request under RESPA was mailed to

14   Defendant EMC Mortgage Corporation which included a demand to cancel the pending Trustee

15   Sale and to rescind the loan under the provisions of TILA.  Defendant EMC Mortgage has yet to

16   respond to the request.

17       50.    On information and belief, Plaintiff alleges that none of the Defendants are

18   "person[s] entitled to enforce" the security interest under the Notes and Deeds of Trust as defined

19   in California Commercial Code §3301.  Plaintiff alleges that Defendants sold their home loans,

20   including Plaintiff's loans, to other financial entities without complying with California law,

21   which "pooled" large numbers of loans, put them into trusts, and sold securities based on them.

22   Plaintiff alleges that none of the Defendants own the loan that is the subject of this action and are

23   not entitled to enforce the security interest.

24       51.    On information and belief, Plaintiff alleges that Defendants regularly approved

25   loans to unqualified borrowers, and implemented questionable business practices.  Defendant

26   lenders employed brokers and loan officers who worked on commission, meaning the more loans

27   they sold, the more money they received.  Plaintiff alleges that Defendants' loan officers received

28

COMPLAINT

a greater commission or bonus for placing borrowers in loans with high interest rates, and borrowers were steered and encouraged to enter into uncompetitive loans or to enter into loans for which the borrowers were not qualified.

52.     Defendants are attempting to obtain putative legal title to Plaintiff's Property without having established that they are a "person entitled to enforce" the security interest under the Notes and Deeds of Trust.  Plaintiff contends that Defendants in fact are not persons entitled to enforce said interest.

53.     Plaintiff entered into consumer credit transactions (hereafter sometimes referred to as "Loan Transactions") with Defendants in which the extended consumer credit was subject to a finance charge and which was initially payable to Defendants.  After paying off a home equity line of credit obtained through GreenPoint Mortgage along with the first loan, Plaintiff's Property is subject to first and second trust deeds.

54.     On February 10, 2009, a Notice of Default was filed in San Joaquin County.  The "Declaration of Compliance" attached to Notice of Default identifies Defendant "Wells Fargo Bank, N.A. as Trustee" as the Beneficiary.

55.     On or about May 14, 2009 Defendant Aztec Foreclosure Corp. sent Plaintiff a Notice of Trustee's Sale, initially setting the sale date for June 3, 2009.  This date has been postponed.

56.     On information and belief, Plaintiff alleges that in connection with each of the wrongful acts alleged herein, Defendants and each of them have utilized the United States mail, telephones and Internet in furtherance of their pattern of unlawful and illegal conduct to collect on negotiable instruments when they were not entitled to do so.

57.     On information and belief, Plaintiff alleges that Defendants, in committing the acts alleged in this Complaint and in other cases, are engaging in a pattern of unlawful and illegal activity.  In pursuing non-judicial foreclosure, Defendants represented that they had the right to payment under the Notes which were secured by the Deeds of Trust.  In fact, the Defendants were not in possession of the Notes and they were neither holders of the Notes nor non-holders of the

1    Notes entitled to payments, as those terms are used in California Commercial Code §§3301 and

2    3309, and therefore they were proceeding to foreclose illegally.

3        58.    On information and belief, Plaintiff alleges that Defendants misrepresented the

4    facts intending to force Plaintiff to either pay large sums of money to Defendants to which they

5    were not entitled or to abandon the property to foreclosure sale to Defendants' profit.

6                              **FIRST CAUSE OF ACTION**

7        **VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")**

8        **(Against Defendants EMC Mortgage Corporation, JP Morgan Chase, Wells Fargo Bank,
     N.A., GreenPoint Mortgage, Vintage Hills Mortgage, Inc., Smart Savings Mortgage, Jeffrey
9              C. Evens, Kimberly Connolly, John Yonan and Molly Buell)**

10       59.    Plaintiff incorporates the allegations set forth in Paragraphs 1-58 above, inclusive,

11   as though set forth fully herein.

12       60.    The loan transactions between Plaintiff and Defendants are mortgage loans

13   covered by RESPA.

14       61.    A violation of RESPA is also made unlawful under California state law by

15   Financial Code §50505, which states: "Any person who violates any provision of [RESPA] or any

16   regulation promulgated thereunder, violates this division [California Residential Mortgage

17   Lending Act]."

18       62.    Plaintiff is not certain at this time exactly which of Defendants was actually the

19   servicer of Plaintiff's loans at any given time.  However, due to the conspiratorial nature of the

20   misdeeds alleged herein, and also due to Defendants' general failure to properly advise Plaintiff as

21   to the roles and identities of the various entities that were purportedly handling her loan at any

22   given time, these allegations are made as to all Defendants.

23       63.    Defendants violated RESPA at the time of closing on the sale of the Property by

24   failing to correctly and accurately comply with RESPA disclosure requirements.

25       64.    Defendant EMC Mortgage violated RESPA, 12 U.S.C. §2605(e)(2) by failing and

26   refusing to provide a written explanation or response to Plaintiff's Qualified Written Request.

27       65.    As a result of Defendants' failure to comply with RESPA, Plaintiff has suffered

28

COMPLAINT

and continues to suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, and costs and reasonable attorney's fees.

## SECOND CAUSE OF ACTION

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")

### 12 U.S.C. §2605 et seq.

### (Against Defendants GreenPoint Mortgage, Vintage Hills Mortgage, Inc., Jeffrey C. Evens and Kimberly Connolly)

66.     Plaintiff incorporates the allegations set forth in Paragraphs 1-65 above, inclusive, as though set forth fully herein.

67.     The loan to Plaintiff by Defendant GreenPoint Mortgage and originated by Defendants Vintage Hills and Connolly is a federally related mortgage loan as defined in the Real Estate Settlement Procedures Act ("RESPA") and implemented by Regulation X.

68.     HUD's 2001-1 Policy Statement establishes a two part test for determining the legality of yield spread premiums to mortgage brokers under RESPA: (1) whether goods or facilities are actually furnished or the services were actually performed for the compensation paid; and (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

69.     GreenPoint Mortgage, the lender, paid Vintage Hills Mortgage, the mortgage broker, and its agent or employee Kimberly Connolly, thousands of dollars for no apparent reason. On information and belief, this payment was a kickback to Vintage Hills Mortgage and Kimberly Connolly for referring Plaintiff to GreenPoint Mortgage.

70.     GreenPoint Mortgage deceptively, unfairly, and fraudulently failed to disclose to their borrowers that they were paying rebates and referral fees to mortgage brokers, thus concealing that the brokers' referrals to them were self-interested.

71.     GreenPoint Mortgage failed to disclose to their customers, including Plaintiff, that additional broker fees were being charged to them through the instrumentality of an interest rate

COMPLAINT

1    that was higher than the competitive rate at the time.

2    72.    Defendants Vintage Hills Mortgage and Kimberly Connolly deceptively, unfairly,

3    and fraudulently failed to disclose to their clients, including Plaintiff, that they were receiving

4    kickbacks and referral fees from lenders, and thus concealed their self-interest in referring their

5    clients to a particular lender.

6    73.    Plaintiff alleges on information and belief that Defendant GreenPoint Mortgage

7    paid Defendants Vintage Hills and Connolly a percentage of the loan amount other than for

8    services actually performed by the brokers or for goods or facilities furnished by the broker, in

9    violation of 12 U.S.C. §2607(b).

10    74.    As a result of Defendants' failure to comply with RESPA, Plaintiff has suffered

11    and continues to suffer damages and costs of suit.  Pursuant to 12 U.S.C. §2607(d) Plaintiff is

12    entitled to recover statutory damages, actual damages in an amount to be determined at trial, and

13    costs and reasonable attorney's fees.

14    ### THIRD CAUSE OF ACTION

15    ### VIOLATION OF CALIFORNIA ROSENTHAL ACT

16    **(Against Defendants EMC Mortgage Corporation, JPMorgan Chase Bank, Wells Fargo
Bank, Mortgage Electronic Registration Systems, Inc. and Aztec Foreclosure Corp.**)

17
18    75.    Plaintiff incorporates the allegations set forth in Paragraphs 1-74 above, inclusive,
as though set forth fully herein.

19
20    76.    Defendants' actions constitute a violation of the Rosenthal Act in that they threaten

21    to take actions not permitted by law, including but not limited to: foreclosing upon a void security

22    interest, foreclosing upon a note of which they were not in possession nor otherwise entitled to

23    payment and using unfair and unconscionable means in an attempt to collect a debt.

24    77.    Defendants' actions have caused Plaintiff actual damages, including, but not

25    limited to: severe emotional distress, including, but not limited to frustration, fear, anger,

26    helplessness, nervousness, anxiety, sleeplessness and depression.

27    78.    As a result of Defendants' violations, Plaintiff is entitled to statutory damages in an

28

amount to be determined at trial, actual damages according to proof, and costs and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

**(Against Defendants Vintage Hills Mortgage, Inc., Smart Savings Mortgage, Jeffrey C. Evens, Kimberly Connolly, John Yonan, Molly Buell, GreenPoint Mortgage and JP Morgan Chase)**

79.     Plaintiff incorporates the allegations set forth in Paragraphs 1-78 above, inclusive, as though set forth fully herein.

80.     Plaintiff hired Vintage Hills Mortgage, Inc., Smart Savings Mortgage, Jeffrey C. Evens, Kimberly Connolly, John Yonan and Molly Buell as her agents for the purpose of obtaining loans to finance her home.

81.     Pursuant to their agreement, Plaintiff agreed to pay a commission from the proceeds of her loans.

82.     Defendants, by and through their agents, owed a fiduciary duty to Plaintiff to act primarily for her benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of their principal.

83.     As Plaintiff's agent, Defendants owed Plaintiff a duty of loyalty and a duty to deal fairly with her at all times.

84.     Plaintiff is informed and believes and thereon alleges that Defendants Vintage Hills Mortgage, Inc., Smart Savings Mortgage, Jeffery Evens, Kimberly Connolly, John Yonan and Molly Buell breached their fiduciary duty to Plaintiff as mortgage brokers by causing Plaintiff harm, by directing Plaintiff into loans for which Plaintiff did not qualify based upon her income and upon which she was certain to default.

85.     Defendants further breached their fiduciary duty to Plaintiff by directing her into loan transactions with excessive fees paid for the loan transaction.

86.     Further, Plaintiff is informed and believes and thereupon alleges that Defendants breached their fiduciary duty to Plaintiff by making reports to various credit bureaus for defaults

15

1    which they themselves caused.

2       87.    Plaintiff is informed and believes and thereon alleges that Defendant GreenPoint

3    Mortgage Funding, Inc. and JP Morgan Chase Bank directly ordered, authorized or participated in

4    the brokers' tortious conduct.

5       88.    Defendants breached their fiduciary duty by (1) obtaining a mortgage loan for her

6    that had unfavorable terms and that she could not ultimately afford, (2) not disclosing the negative

7    consequences of said loan, (3) securing a secret profit by not properly complying with the Real

8    Estate Settlement Procedures Act by making and accepting illegal rebates, and (4) failing to

9    supervise employees and/or agents employed as loan brokers in their dealings with Plaintiff.

10      89.    Defendants GreenPoint Mortgage Funding, Inc. and JPMorgan Chase Bank,

11   through their own actions, interfered with the obligations of Defendants Jeffrey C. Evens,

12   Kimberly Connolly, John Yonan and Molly Buell by offering them incentives to breach their

13   fiduciary duty.

14      90.    Plaintiff has been damaged as a result of Defendants' breach, and as such is

15   entitled to actual damages.

16      91.    Defendants' intentional conduct in breaching their fiduciary duty to Plaintiff was

17   oppressive, fraudulent or malicious, and was in conscious disregard of Plaintiff's rights as set

18   forth in California Civil Code §3294 and Plaintiff should recover, in addition to actual damages,

19   punitive damages to make an example of and punish each Defendant.

20                            **FIFTH CAUSE OF ACTION**

21                                    **FRAUD**

22                      **(Against Defendant Kimberly Connolly )**

23      92.    Plaintiff incorporates the allegations set forth in Paragraphs 1-91 above, inclusive,

24   as though set forth fully herein.

25      93.    As alleged herein Defendant Kimberly Connolly made the following

26   misrepresentations to Plaintiff with regard to material facts:

27      (1)    that she could get Plaintiff a "good deal" and the "best interest rates" available on

28

COMPLAINT

1    the market in or about July 2005;

2    (2)    that in order to get Plaintiff a "good deal" and the "best interest rates" available on

3         the market, Plaintiff should submit a loan application to potential lenders in which

4         Plaintiff would claim that Plaintiff worked for Connolly's friend, when Defendant

5         Connolly knew that information was false;

6    (3)    all brokers submit false information in loan application forms;

7    (4)    that Plaintiff should not be concerned that her monthly payments would increase

8         over the life of the loan or that Plaintiff would have to rely on her savings to pay

9         her loan payments, taxes and insurance each month because Plaintiff would be

10        able to refinance her loans to lower the interest rate and the payments before the

11        loan rates would reset.

12    94.    These representations made by Defendant Connolly were false when made.

13    95.    Defendant Connolly knew that these representations were false when made, or that

14   these representations were made with reckless disregard for the truth.

15    96.    Defendant Connolly intended that Plaintiff rely on these material representations.

16    97.    Plaintiff reasonably relied on said material representations and was entitled to rely

17   on them, since Defendant Connolly was acting as Plaintiff's agent and Plaintiff relied on

18   Defendant Connolly's expertise as an agent.

19    98.    Plaintiff's reliance on Defendant's false representations was a substantial factor in

20   causing Plaintiff harm.

21    99.    As a result of Plaintiff's reliance on Defendant's false representations as set forth

22   above, Plaintiff suffered damages.

23    100.    Defendants Connolly's intentional conduct as aforesaid was oppressive, fraudulent

24   or malicious, and was in conscious disregard of Plaintiff's rights as set forth in California Civil

25   Code §3294 and Plaintiff should recover, in addition to actual damages, punitive damages to

26   make an example of and punish Defendant.

27

28

17

COMPLAINT

1

2

3

4

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants Kimberly Connolly, Jeffrey C. Evens,
GreenPoint Mortgage Funding, Inc., Smart Savings Mortgage, Molly Buell, John Yonan
and JPMorgan Chase Bank)**

5

6

    101.    Plaintiff incorporates the allegations set forth in Paragraphs 1-100 above, inclusive, as though set forth fully herein.

7

8

9

10

    102.    Defendants breached their agreement with Plaintiff as alleged above by failing to exercise reasonable efforts and due diligence as promised.  Further, Defendants breached their agreement with Plaintiff by failing to obtain payment and interest rates as represented, failing to submit an accurate loan application and failing to explain the loan documents to Plaintiffs.

11

12

13

14

15

    103.    Plaintiff attempted to perform her duties under the loan contract.  However, after the loan agreement was signed, Plaintiff's payment increased, Plaintiff depleted her savings and Defendants failed to refinance the mortgage as promised.  In addition, Plaintiff discovered that the loan terms and payment structure were substantially different from what had been promised.  Accordingly, Plaintiff's non-compliance was excused.

16

17

    104.    Defendants breached their agreement to Plaintiff to provide Plaintiff with an affordable loan.  This breach by Defendants resulted in foreclosure on Plaintiff's home.

18

19

    105.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages, including foreclosure and loss of equity.

20

21

    106.    Plaintiff further seeks restitution costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

22

**SEVENTH CAUSE OF ACTION**

23

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

24

**(Against all Defendants)**

25

26

    107.    Plaintiff incorporates the allegations set forth in Paragraphs 1-106 above, inclusive, as though set forth fully herein.

27

    108.    A duty of good faith and fair dealing is an implied term of the aforesaid contract.

28

COMPLAINT

Defendants' duties of good faith and fair dealing included, but were not limited to not depriving Plaintiff of the benefit of the bargain.

109.    Defendants breached the implied duty of good faith and fair dealing owed to Plaintiff by, among other things, the acts and omissions herein alleged.

110.    As a proximate result of Defendants' breaches of the covenant of good faith and fair dealing alleges herein, Plaintiff has suffered damages, incurred attorneys' fees and costs to recover the property, suffered a loss of reputation and goodwill, suffered emotional distress, and suffered other economic losses and damages in amounts not yet fully ascertained, but within the jurisdiction of this Court.

111.    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth below.

## EIGHTH CAUSE OF ACTION

### WRONGFUL FORECLOSURE

**(Against Defendants EMC Mortgage Corporation, Wells Fargo Bank,
JP Morgan Chase Bank and Aztec Foreclosure Corp.)**

112.    Plaintiff incorporates the allegations set forth in Paragraphs 1-111 above, inclusive, as though set forth fully herein

113.    California Commercial Code §3301 specifically identifies the persons who are entitled to enforce a security interest, such as instituting a foreclosure sale under a deed of trust. The statute is exclusive in nature, and those who are not identified do not have the right to enforce such an interest.

114.    Plaintiff is informed and believes and thereon alleges that Defendants EMC Mortgage Corporation, JP Morgan Chase Bank, Wells Fargo Bank and Aztec Foreclosure Corp. were not and are not in possession of the Note containing a security interest signed by the Plaintiff, and are not beneficiaries or assignees of the person or entity in possession of the note, and are not otherwise entitled to payment.  Moreover, Plaintiff is informed and believes and thereon alleges that said Defendants are not "person[s] entitled to enforce" a security interest on

the Property, as that term is defined in Commercial Code §3301.

115.    In the Notice of Trustee's Sale, Defendant Aztec Foreclosure Corp. claimed that it was the duly appointed trustee pursuant to the Deed of Trust, but failed to identify who was the holder of the beneficial interest in the Property.  Plaintiff is informed and believes and thereon alleges that Defendant Aztec Foreclosure Corp. is not in possession of the Note, and is not entitled to enforce the security interest in the Property.

116.    Said Defendant also failed to properly give notice of the Notice of Default, which apparently is dated on or about February 10, 2009, as provided by California Civil Code §2924b(b).

117.    Plaintiff sent a Qualified Written Request to Defendant EMC Mortgage but, to date, has not received a substantive response.

118.    Said Defendants' failure to comply with statutory notice requirements denied Plaintiff the opportunity to exercise the rights that the statutory notice is specifically designed to protect.

119.    On October 3, 2008 The Emergency Economic Stabilization Act of 2008 (EESA) was signed into law.  In implementing the Act, the United States Treasury Department has instituted a number of programs, including the "Making Homes Affordable" program, the Capital Purchase Program, and the Capital Assistance Program, among others.  Pursuant to the plans and the authority provided by H.R.1424 Title I §109-110, the United States Treasury has ordered that all recipients of capital investments under the Financial Stability Plan are required to commit to participate in mortgage foreclosure mitigation programs consistent with guidelines the Treasury Department released as part of its Making Home Affordable mortgage modification program.

120.    Plaintiff is informed and believes and thereon alleges that the parent company of EMC Mortgage Company, Wells Fargo Bank and JP Morgan Chase Bank, pursuant to §105(a) of the United States Department of the Treasury's Troubled Assets Relief Program (TARP) Report to Congress, received monies from the U.S. Government for purchases of troubled assets in 2008.

121.    As a recipient of TARP funds, the parent company for EMC Mortgage Company,

COMPLAINT

1   JPMorgan Chase Bank and Wells Fargo Bank are subject to the U.S. Treasury's modification

2   program guidelines for the Making Home Affordable Program.  Said guidelines, promulgated on

3   March 4, 2009 require that "[a]ny foreclosure action . . . be temporarily suspended during the trial

4   period, or while borrowers are considered for alternative foreclosure prevention options."

5        122.    Defendants have failed to suspend the foreclosure action to allow for consideration

6   of alternative foreclosure prevention options.

7        123.    As a direct and proximate result of said Defendants' wrongful actions, Plaintiff has

8   suffered damages, including, but not limited to, direct monetary loss, consequential damages, and

9   emotional distress.

10       124.    In committing the wrongful acts alleged herein, said Defendants acted with malice,

11  oppression and fraud.  Said Defendants' willful conduct warrants an award of exemplary damages

12  in an amount sufficient to punish the wrongful conduct and deter such misconduct in the future.

13                             **NINTH CAUSE OF ACTION**

14        **VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200**

15                               **(Against all Defendants)**

16       125.    Plaintiff incorporates the allegations set forth in Paragraphs 1-124 above,

17  inclusive, as though set forth fully herein.

18       126.    Defendants Vintage Hills Mortgage and Kimberly Connolly untruthfully told

19  Plaintiff that they would procure for her the best, most competitive interest rate available at the

20  time.  In truth, at the time Plaintiff was told that these defendants had already determined to refer

21  Plaintiff to GreenPoint Mortgage for her loan.

22       127.    GreenPoint Mortgage, the lender, paid Vintage Hills Mortgage, the mortgage

23  broker, thousands of dollars for no apparent reason.  On information and belief, this payment was

24  a kickback to Vintage Hills Mortgage for referring Plaintiff to Greenpoint Mortgage.

25       128.    The payment by lenders to mortgage brokers of kickbacks allows the lenders to

26  charge deceptive, misleading, unfair, fraudulent and excessive interest rates to the public,

27  including Plaintiff.  Lenders who pay kickbacks for referrals do not need to compete on price in

28

COMPLAINT

the marketplace because they can procure business from mortgage brokers in this way without being competitive.

129.    Mortgage brokers who receive referral fees from a lender have no financial motivation to refer their clients to the lender with the most competitive rates, and the receipt of such fees constitutes a breach of their fiduciary duty of loyalty to their clients, while the payment of such fees constitutes inducement to mortgage brokers to breach their fiduciary duty.

130.    GreenPoint Mortgage deceptively, unfairly, and fraudulently failed to disclose to their borrowers that they were paying rebates and referral fees to mortgage brokers, thus concealing that the brokers' referrals to them were self-interested.

131.    GreenPoint Mortgage failed to disclose to their customers such as Plaintiff that additional broker fees were being charged to them through the instrumentality of an interest rate that was higher than the competitive rate at the time.

132.    Defendants Vintage Hills Mortgage and Kimberly Connolly deceptively, unfairly, and fraudulently failed to disclose to their clients, including Plaintiff, that they were receiving kickbacks and referral fees from lenders, and thus concealed their self-interest in referring their clients to a particular lender.

133.    Defendants have deceptively, unfairly, and fraudulently foreclosed on homes owned by members of the public, authorized foreclosure on such homes, and participated, aided and abetted such foreclosures, even though they were not a lender, trustee under a deed of trust, noteholder, or beneficiary of a note under California law, and knew that their conduct was not authorized under California law.

134.    On information and belief, Defendant GreenPoint Mortgage followed a business practice of paying mortgage brokers kickbacks for referring brokers' clients, including Plaintiff, to GreenPoint Mortgage, allowing Defendant GreenPoint Mortgage to charge deceptive, misleading, unfair, fraudulent and excessive interest rates to the public, including Plaintiff.

135.    On information and belief, Defendant Vintage Hills Mortgage followed a business practice of receiving referral fees from lenders, including Defendant GreenPoint Mortgage,

22

COMPLAINT

1  failing to disclose to their clients, including Plaintiff, that they were receiving kickbacks and

2  referral fees from lenders.

3      136.    Defendants' conduct as aforesaid constitutes a violation of RESPA, and therefore

4  constitutes unfair competition under California Business & Professions Code §17200.

5      137.    Plaintiff is informed and believes and thereon alleges that Defendants committed

6  unlawful, unfair, and/or fraudulent business practices, as defined by California Business and

7  Professions Code §17200, by engaging in the unlawful, unfair, and fraudulent business practices

8  alleged herein.

9      138.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various

10  damages and injuries according to proof at trial.

11      139.    Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair

12  business practices described herein.

13      140.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs

14  of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just

15  and proper.

16

17          WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

18      1.    That judgment be entered in her favor and against Defendants, and each of them;

19      2.    For an order requiring Defendants to show cause, if they have any, why they

20          should not be enjoined as set forth below, during the pendency of the action;

21      3.    For a temporary restraining order, preliminary and permanent injunction

22          preventing Defendants, or anyone acting under in concert with them, from

23          collecting on the subject loan and from causing the Property to be sold, assigned or

24          transferred to a third party;

25      4.    For damages, disgorgement, and injunctive relief;

26      5.    For compensatory and statutory damages, attorneys' fees and costs according to

27          proof at trial;

28

COMPLAINT

6.     For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

7.     For such other and further relief as the Court may deem just and proper.

DATED: August 29, 2009

Respectfully submitted,

Trial & Technology Law Group,
A Professional Corporation
Attorney for Plaintiff Diana Rios

_____
Robert A. Spanner

## DEMAND FOR JURY TRIAL

Plaintiff Diana A. Rios demands a trial by jury.

DATED: August 29, 2009

Trial & Technology Law Group,
A Professional Corporation
Attorney for Plaintiff Diana Rios

_____
Robert A. Spanner

24

COMPLAINT